UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHEY SOLIMAN (A#047-145-027),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX
DETENTION FACILITY, et al.,

Respondents.

No.  1:26-cv-02465-DAD-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

I.      **Factual and Procedural History**

Petitioner was born in England to Egyptian parents.  ECF No. 17 at 4.  He lawfully entered the United States as a child on December 1, 1999 as a legal permanent resident.  ECF No. 17 at 4-5.  As an adult, he was convicted of DUI and other offenses related to controlled substance use.  See ECF No. 8-1 at 12-15.

On March 3, 2015, the Department of Homeland Security served petitioner with a Notice to Appear ("NTA") for immigration court proceedings, charging him as removable based on two convictions for crimes involving moral turpitude ("CMTs") and a controlled substance

1

conviction.  See 8 U.S.C. §§ 1227(a)(2)(A)(ii), 1227(a)(2)(B)(i).  See ECF No. 8-1 at 7-8.  An immigration judge ("IJ") ordered petitioner removed to Egypt, but granted him withholding of removal to Egypt on May 24, 2018.  Since petitioner could not be removed to Egypt, Immigration and Customs Enforcement ("ICE") released him from its custody sometime in 2018, at which point he returned to live with his mother in Arizona.  ECF No. 17-2 (Letter from Hwida Yateem).

On September 23, 2025, petitioner was arrested by local authorities in Arizona for possession/use of drug paraphernalia, criminal trespass, shoplifting, and obstructing police.  ECF No. 8-1 at 3.  Upon release from Maricopa County Jail on October 9, 2025, ICE redetained him.  ECF No. 8-1 at 20; ECF No. 17 at 5.  On the same day, ICE served him with a Final Warrant of Removal/Deportation.  ECF No. 8-1 at 26.  Petitioner is currently in custody at the Golden State Annex Detention Facility located in this judicial district.  ECF No. 17 at 5.

Petitioner filed a pro se petition for writ of habeas corpus on March 21, 2026.  On April 9, 2026, respondents filed a motion to lift the Court's no transfer order so that they could deport him to Equatorial Guinea.  See ECF No. 7 (Motion to Lift Stay of Transfer).  Petitioner had no knowledge of respondents' intent to remove him to Equatorial Guinea at the time he filed his habeas petition.  He first learned about this when he received respondents' motion to lift the no transfer order.  See ECF No. 17-1, ¶ 11 (Declaration of Jacqueline Marie Brown).

In response to the motion to lift the no transfer order, the Court appointed counsel for petitioner.  ECF No. 9.  Counsel then made an emergency filing opposing respondents' motion to lift the no transfer order and respondents filed a reply.  ECF No. 12.  On April 17, 2026, after a hearing, District Judge Drozd issued an order denying respondents' request to lift the do not transfer order and referring the matter to the undersigned for further proceedings.  ECF No. 16.

Petitioner filed a first amended § 2241 petition on April 27, 2026.  ECF No. 17.  In his first claim for relief, petitioner contends that his Fifth Amendment right to due process has been violated based upon his prolonged detention of approximately eight months without a bond hearing before an IJ.  ECF No. 17 at 10-11.  Petitioner submits that the government has the burden of demonstrating a significant likelihood of his removal in the reasonably foreseeable future because he was previously released by ICE in 2018 and then redetained in October 2025.

2

ECF No. 18 at 10.  Petitioner argues that respondents cannot meet their burden because he cannot lawfully be removed to Equatorial Guinea.  Id.  Therefore, petitioner is stuck in the removable but unremovable limbo which Zadvydas is designed to remedy.  Id. at 9-11.

In his second claim for relief, petitioner challenges his third country removal to Equatorial Guinea on the grounds that it violates the Fifth Amendment, the Convention Against Torture and its implementing regulations, as well as 8 U.S.C. § 1231 governing third country removals.  ECF No. 17 at 11-12.  Specifically, petitioner asserts that Equatorial Guinea is not designated in his order of removal and he was not provided with adequate notice concerning this third country removal, depriving him of "any meaningful opportunity to assert protection claims specific to that country."  Id. at 11-12.  Petitioner contends that respondents have failed to comply with 8 U.S.C. § 1231(b)(2)(E)(vii) because there "is no indication that the government pursued [p]etitioner's own designation, England, before resorting to Equatorial Guinea[.]"  Id. at 6.  Moreover, the asserted diplomatic assurances that the State Department has received from Equatorial Guinea do not address the specific risk that petitioner faces of being sent to Egypt, where an IJ has already determined that he has a legitimate fear of persecution resulting in his withholding of removal to that country.  Id. at 6.  Being sent from Equatorian Guinea to Egypt amounts to refoulement in substance which would render the IJ's decision granting petitioner withholding of removal to Egypt a legal nullity and "allow the government to extinguish constitutional due process rights through a diplomatic exchange."  Id. at 8.  "That gap is not a technicality, but rather the central constitutional problem" in this case.  Id. at 6.  Petitioner emphasizes that respondents "may not remove a noncitizen to any country where his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion" or if "there are substantial grounds to believe the noncitizen would face torture."  Id. (citing 8 U.S.C. § 1231(b)(3)(A) and 8 C.F.R. §§ 208.16–208.18).

Petitioner alleges he fears being removed to Equatorial Guinea because it is not safe for deportees from the United States.  ECF No. 17-1, ¶ 12.  When petitioner was asked by a deportation officer while in detention if there was a third country that he wanted to be removed to, he indicated England, his country of birth.  Id., ¶ 11.

In support of his fear of being removed to Equatorial Guinea, petitioner submitted a Declaration from Tutu Alicante León, the Executive Director of Equatorial Guinea Justice. ECF No. 12-2. Mr. Alicante León, a lawyer, is an expert on the judicial system of Equatorial Guinea. Id. His Declaration explains that Equatorial Guinea has no asylum system in place that comports with international legal standards, much less any procedural safeguards preventing chain refoulement to countries where deportees are at risk of persecution or torture. Id., ¶ 4. His non-governmental organization has documented more than two dozen third-country nationals deported by the United States to Equatorial Guinea since November 2025 who have subsequently been deported to their countries of origin despite "the existence of withholding of removal orders or other forms of protection issued by United States immigration courts." Id., ¶¶ 5-6. Mr. Alicante León opines that "an individual deported from the United States to Equatorial Guinea who faces risk in their country of origin—including Egypt—would face a significant likelihood of subsequent deportation to that country without adequate procedural protection." Id., ¶ 9. As a result, there is a "substantial risk of chain refoulement" for individuals deported from the U.S. to Equatorial Guinea. Id., ¶ 10.

In the amended § 2241, petitioner seeks immediate release from immigration detention because the third country removal to Equatorial Guinea cannot lawfully be effectuated. ECF No. 17 at 12. In the alternative, petitioner requests a bond hearing within seven days. Id. Petitioner also seeks to enjoin respondents from removing him to any third country unless they have "(a) provided Petitioner with written notice, in a language he understands, of the specific country to which removal is proposed and the statutory basis for that designation; (b) afforded Petitioner a meaningful opportunity to consult with counsel and to apply for withholding of removal and protection under the Convention Against Torture with respect to that country; and (c) obtained evidence that the proposed third country has agreed to specifically accept Petitioner." Id. at 12-13.

In their answer, respondents acknowledge that petitioner is subject to discretionary detention pursuant to 8 U.S.C. § 1231(a)(6) because the 90-day mandatory detention period following his final order of removal has already passed. ECF No. 20. Although the

4

presumptively reasonable six-month period of detention has passed, respondents' contend that petitioner has not demonstrated a "good reason to believe that there is no significant likelihood of his removal in the foreseeable future" because petitioner "is expected to be removed pursuant to a Third Country Removal Agreement that the Department of State signed with the Government of Equatorial Guinea on October 23, 2025."  ECF No. 20 at 3-4; see also ECF No. 11-1, ¶ 4 (Declaration of DHS Official).  Respondents did not submit a copy of this Third Country Removal Agreement, but indicate that it included "diplomatic assurances that the noncitizens removed from the United States … will not be subjected to persecution or torture."  Id. at 3; see also ECF No. 11-1 at ¶ 5.  The State Department determined that these diplomatic assurances were credible.  Id.

Moreover, Respondents placed petitioner on a charter flight manifest for removal to Equatorial Guinea on April 28, 2026.  ECF No. 11 at 3; see also ECF No. 11-1, ¶ 8.  "His acceptance by Equatorial Guinea and placement on the manifest for this charter serves as the travel document in [sic] Petitioner's removal."  ECF No. 11-1 at ¶ 7.  Before this flight was scheduled to depart, District Judge Drozd denied respondent's motion to transfer petitioner outside of this judicial district to effectuate his removal to Equatorial Guinea.  ECF No. 16.

With regard to petitioner's due process challenge to his third country removal, respondents assert that petitioner is only entitled to the procedures outlined in the DHS Guidance Regarding Third Country Removals issued on March 30, 2025.  ECF No. 11 at 4-5.  While acknowledging that there is pending litigation challenging this third country removal policy, respondents take the position that "[n]o further process is required."  Id. at 5 (citing DHS v. D.V.D., No. 1:25-cv-10676-BEM (D. Mass.)).  Respondents do not challenge petitioner's expert declaration concerning the lack of any system for adjudicating asylum claims for individuals deported to Equatorial Guinea, or the occurrence and frequency of Equatorial Guinea's chain refoulement in cases involving deportees from the U.S.

Petitioner did not file a reply brief and the time to do so has expired.

**II.     Withholding of Removal and Third County Removals**

Withholding of removal is a form of immigration relief that requires the Government not

5

to remove a noncitizen to a country where he has shown a sufficient likelihood of persecution, although it does not guarantee relief from removal to an alternative country. See 8 U.S.C. § 1231(b)(2)(E). Historically, relatively few noncitizens granted withholding of removal have successfully been removed to alternative countries. See Johnson v. Guzman Chavez, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of [noncitizens] who were granted withholding of removal were actually removed to an alternative country").

An IJ must designate a country or countries of removal in any order of removal. See 8 C.F.R. § 1240.12(d). However, DHS may seek to remove a noncitizen to a country that is not designated in the IJ's order of removal if the noncitizen is unable to be removed to the designated country. See id. ("In the event [DHS] is unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit the authority of [DHS] to remove the alien to any other country as permitted by section 241(b) of the Act."); see also Kifle v. Holder, 507 Fed. Appx. 703, 703 (9th Cir. 2013) (unpub.); Aden v. Nielsen, 409 F.Supp.3d 998, 1008 (W.D. Wash. June 20, 2019). Furthermore, 8 U.S.C. § 1231(b)(2) establishes the process for designating a country of removal. It prioritizes removal to the country designated by the noncitizen, then to the country of birth, citizenship, or other residence. 8 U.S.C. § 1231(b)(2)(A), (D). If none of those options are available, then the government may remove a noncitizen to "another country whose government will accept the [noncitizen]." 8 U.S.C. § 1231(b)(2)(E)(vii). Regardless of what country of removal is selected, the Immigration and Nationality Act ("INA") prohibits a noncitizen from being removed to any country where his or her life or freedom would be threatened on account of a protected ground or where it is more likely than not that he or she would be tortured if removed to the proposed country of removal. See 8 U.S.C. § 1231(b)(3), 8 C.F.R. §§ 208.16-18, 1208.16-18; 28 C.F.R. § 200.1 (prohibiting the execution of any removal order that would violate Article 3 of the Convention Against Torture).

In March of 2025, the Secretary of Homeland Security, Kristi Noem, issued a memorandum entitled "Guidance Regarding Third Country Removals" ("Third Country Guidance"). ECF No. 11-1, ¶ 8. The Third Country Guidance provides instructions to

immigration agencies on how to initiate removal to a third country (a country not designated in the initial removal order) for individuals who have been granted withholding of removal and are subject to a removal order.  The Third Country Guidance provides that noncitizens may be removed to a third country that "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and "[i]f the United States has received such assurances, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures."

The Third Country Guidance goes on to say that if the United States has not received those assurances or does not believe them to be credible, DHS must start the third country removal process by informing the noncitizen of removal to the third country.  If the noncitizen affirmatively expresses a fear of removal to the third country to U.S. Citizenship and Immigration Services (USCIS), then the noncitizen will be referred for a screening by a USCIS officer for eligibility for protection under 8 U.S.C. § 1231(b)(3) and the CAT for the country of removal.  After this initial screening, if the USCIS officer does not believe that it is more likely than not that the noncitizen will be persecuted on a statutorily protected ground or tortured in the country of removal, the noncitizen will be removed.  If a USCIS officer determines that the individual does meet this standard, and the noncitizen was previously in immigration court proceedings, ICE will be informed and may file a motion to reopen the immigration proceedings, or "ICE may choose to designate another country for removal."

### III.   Removal to Equatorial Guinea Without Procedural Protections

The record establishes, and the parties agree, that petitioner's fear-based claims of persecution and torture if removed to Equatorial Guinea have not been evaluated.  The central question before the Court as to this issue is whether due process requires that petitioner be given adequate notice and an opportunity to seek relief against removal to Equatorial Guinea or merely the procedures available under the Third Country Guidance.

As described above, under the INA, respondents may seek to remove a noncitizen granted withholding of removal from one country to another country that will accept the noncitizen by following a statutorily prescribed process for selecting an alternative country of removal.  See 8

U.S.C. § 1231(b)(2)(E)(i)–(vii); Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 341 (2005); Himri v. Ashcroft, 378 F.3d 932, 938-40 (9th Cir. 2004) (holding that IJ had impermissibly designated Jordan as an alternative country of removal under § 1231(b)(2) where "the government did not establish that Jordan would accept the petitioners before Jordan was named as a country of removal").  But the INA prohibits removal to a country where a noncitizen's life or freedom would be threatened on account of a protected characteristic or where a noncitizen would be tortured.  See 8 U.S.C. § 1231(b)(3).  Withholding of removal is thus a mandatory protection for noncitizens who demonstrate that they meet the criteria, rather than a discretionary form of relief.  See I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 419–20 (1999).  Eligibility is determined on an individual basis to "strike a ... balance between securing the removal of inadmissible aliens and ensuring their humane treatment."  Jama, 543 U.S. at 348.

Under binding Ninth Circuit authority, "[f]ailing to notify individuals who are subject to deportation that they have a right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."  Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999).  On this point, there is no room for disagreement based on this Circuit precedent.  See Y.T.D. v. Andrews, No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *8-11 (E.D. Cal. Sep. 18, 2025); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy [the Third Party Guidance] is contrary to Ninth Circuit precedent" and collecting Circuit cases); Aden, 409 F. Supp. 3d at 1009 (a "noncitizen must be given sufficient notice of a country of deportation that, given [her] capacities and circumstances, [she] would have a reasonable opportunity to raise and pursue [her] claim for withholding of deportation.") (citations omitted).  Thus, the Fifth Amendment due process clause protects petitioner from being removed to Equatorial Guinea since respondents have not provided him with any opportunity to raise his fear based claims for protection.

Respondents contend that additional process is not necessary because DHS "is only required to follow the procedures of the" Third Country Guidance and because the Department of State has already determined that Equatorial Guinea's "diplomatic assurances" concerning

8

persecution or torture "were credible."  ECF No. 20 at 4-5.  However, as another court recently noted in a case concerning third-country removal to Equatorial Guinea, the Third Country Guidance envisions "abridged ways of removing a noncitizen[,]" including removal "without any additional process" where the Department of State has received "diplomatic assurances that [noncitizen]s removed from the United States will not be persecuted or tortured[.]"  Mbaba v. Perez, No. 5:26-cv-00070, 2026 WL 917484, at *8 (S.D. Tex. Feb. 13, 2026) (quoting Third Country Guidance).  That scheme is "not sufficient under the Constitution" as it "fail[s] to provide a meaningful opportunity to raise a fear claim."  Id. at *9.  "Due process requires the Government to answer whether [Mr. Soliman] specifically faces possible torture or persecution in Equatorial Guinea, including whether removal to Equatorial Guinea would result in 'chain refoulement' to [his] home country of [Egypt]. … Thus, reliance on blanket assurances is no substitute for an individualized determination through a proceeding that is appropriately calibrated to provide notice and an opportunity to be heard."  Id.

The undersigned recommends that respondents be prohibited from removing petitioner to Equatorial Guinea without first providing him with a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture as to that country.  Should respondents wish to further pursue petitioner's removal to Equatorial Guinea, they should reopen the removal proceedings so that petitioner can be heard and provide adequate notice of those proceedings.  See Nguyen v. Scott, No. 2:25-CV-01398, 2025 WL 2419288, at *18–19 (W.D. Wash. Aug. 21, 2025) ("[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." [Aden, 409 F. Supp. 3d at 1010.]  This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.  Id. at 1011.").

### IV.    Zadvydas Analysis

Petitioner also challenges his prolonged detention for nearly eight months pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001).  Respondents acknowledge that petitioner is subject to

discretionary detention at this point pursuant to 8 U.S.C. § 1231(a)(6).  Furthermore, the parties agree that petitioner has been detained for longer than the presumptively reasonable period of detention in Zadvydas.  Therefore, the only remaining question is whether it is reasonably likely in the foreseeable future that petitioner will be removed to Equatorial Guinea.  Although the parties dispute who has the burden of demonstrating the likelihood of removal, the undersigned has already concluded that respondents should be precluded from removing petitioner to Equatorial Guinea at this juncture by failing to provide him with a meaningful opportunity to raise his fear based claims.  Having so concluded, there must be additional proceedings in immigration court before respondents may lawfully remove petitioner to Equatorial Guinea or any other third country.  This will undoubtedly further prolong petitioner's detention.  See Riveros Cadavid v. Dep't of Homeland Sec., No. EDCV 26-01805-KK-DTBX, 2026 WL 1105032, at *3 (C.D. Cal. Apr. 17, 2026) (recognizing that adjudicating fear based claims to third countries of removal "require additional, lengthy proceedings").  There is no timetable for such proceedings in immigration court because respondents have been following Third Country Guidance, rather than the binding precedent in this Circuit discussed above.

Under these circumstances, petitioner's removal to Equatorial Guinea is not likely in the reasonably foreseeable future and his prolonged detention under such circumstances is unreasonable and no longer authorized by 8 U.S.C. § 1231(a)(6).  See Zadvydas, 533 U.S. at 699-700 (concluding that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances"); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1082 (9th Cir. 2006) (finding removal was not reasonably foreseeable and ordering noncitizen's immediate release where detention was prolonged, noncitizen had already won CAT protection, and administrative review of his removal case was ongoing); Abduvakhidov v. Warden, Golden State Annex Detention Facility, No. 1:25-cv-01060-EPG-HC, 2026 WL 1298157 (E.D. Cal. May 12, 2026) (granting habeas relief and ordering noncitizen's immediate release based on prolonged detention in third country removal case).  Having so concluded, the undersigned recommends that petitioner

be immediately released on the same conditions of supervision that he was subject to prior to his redetention in October 2025.  See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5 (conditions of release for post-removal order period).

**V.    Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's amended application for a writ of habeas corpus (ECF No. 17) be granted.

2.  Respondents be ordered to immediately release Petitioner Mohey Soliman (A#047-145-027) under the same conditions of supervision that he was subject to prior to his redetention on October 9, 2025.

3.  At the time of release, respondents be required to return all of petitioner's documents and possessions.

4.  Respondents be prohibited from removing petitioner to Equatorial Guinea without first reopening his removal proceedings, providing him adequate notice concerning those reopened removal proceedings, and providing him with a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture before an immigration judge.

5.  Respondents be ordered to not redetain petitioner unless and until they comply with all of the procedures outlined in 8 C.F.R. §§ 241.4(l), 241.13(i) and any other applicable statutory and regulatory procedures.

6.  Respondents be required to file a notice of compliance within three (3) days of any final order adjudicating this petition.

7.  The Clerk of Court be directed to serve a copy of any final order requiring release on the Golden State Annex.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v.

11

Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 5, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE